UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.S., a minor, by and through his mother and natural guardian, SAMANTHA PARDE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:17-cv-02418-BTM-KSC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 44, 45]** |

Before the Court are cross motions for summary judgment filed by Plaintiff and Defendant United States. (ECF Nos. 44, 45.) Plaintiff filed an *ex parte* request for oral argument on its motion for summary judgment, which the Court granted. (ECF Nos. 46, 47.) On July 11, 2019, the Court heard oral argument on their motions. For the reasons discussed below, the Court denies both motions. (ECF Nos. 44, 45).

//

## BACKGROUND

Staff Sergeant Brian Shears ("SSG Shears") resides in Arizona but is a member of the California National Guard. (ECF No. 45-2, at 2-3.) As part of his duties, SSG Shears attends training drills one weekend per month at the Kearny Mesa Armory (the "Armory") in San Diego, California.[1] (ECF No. 44-2, at 5.) During his November 2015 weekend training drill, a senior non-commissioned officer told SSG Shears to bring his family to the December 2015 weekend training drill because there would be a presentation regarding changes to military benefits that could affect them. (ECF No. 44-2, at 11-17.) SSG Shears also received two newsletters, dated October 26 and November 24, 2015 (collectively, the "Newsletters"), wherein his commander, Captain Larry Rankin, stated that "[t]he Family Readiness Group is planning to have an informational briefing during DEC IDT. This will be a time to invite your family members to join us for a few hours, as much of the information presented will be pertinent to updating Family Care plans, and access to available resources for your loved ones." (ECF No. 45-2, at 9-12, 23-26, 28-31.)

SSG Shears and his family, including his five-year-old son, the Plaintiff H.S., arrived at the Armory at midmorning on Sunday, December 6, 2015. (ECF No. 44-2, at 20, 22; ECF No. 45-2, at 14.) In addition to setting up booths for representatives from various benefits providers to present on behalf of the Family Readiness Group, the command team organized a holiday party for the service members and their families who attended. (ECF No. 44-3, at 3-4, 36-37.) Various entertainment and leisure activities were provided for the attendees' enjoyment,

---

[1] While the Armory is owned by the State of California, it is "occupied and operated" by the United States, which partially funds the Armory's operations, maintenance and renovations and uses the Armory for drills and storage of federal equipment and supplies. (ECF No. 44-4 ¶¶ 2-5; ECF No. 44-3, at 54-57 (Master Cooperative Agreement).)

including a holiday meal, movie projectors, a video game console, and an inflatable play house castle with trampoline and slide (the "Bounce House"). (ECF No. 44-3, at 29-30, 40-47; ECF No. 45-2, at 42; *see also* ECF 45-4, at 13-15 (photographs of the Bounce House).) The Bounce House was erected on the concrete floor of the Armory's interior,[2] with padded wrestling mats placed on the ground at the Bounce House's entrance and slide terminus. (ECF No. 44-3, at 11, 15-18, 23-24, 27-28.).)

While waiting for the day's scheduled events to begin, SSG Shears' children became restless and requested to play on the Bounce House. (ECF No. 44-2, at 22-23.) SSG Shears obliged and supervised his children while they interacted with the Bounce House. (ECF No. 44-2, at 24-25.) Another child jumped behind H.S. as he climbed to the top of the Bounce House's slide, which caused the Bounce House to shake. H.S. was ejected from the top of the Bounce House. (ECF No. 44-2, at 25-27, 53-56.) H.S. fell approximately eight feet and landed head-first on the concrete floor. (*Id.*) H.S. was immediately taken to the hospital for emergency medical treatment and surgery. H.S. suffered substantial injuries. (ECF No. 44-3, at 50; ECF No. 45-2, at 36-38.)

H.S. by guardian initiated this action on December 1, 2017, alleging a premises liability cause of action against the United States. (ECF No. 1.)

## **STANDARD**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v.*

---

[2] The United States asserts that Captain Rankin and other senior officers discussed other potential locations for the Bounce House, including the Armory's front and back yards, but dismissed these other locations due to security, safety, and access concerns. (*See* ECF No. 44-3, at 11, 23-24, 27-28.)

*Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248-50.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial.  *Id.* at 322-23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to demonstrate that a genuine issue of disputed fact remains.  *Celotex*, 477 U.S. at 314.  The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings."  *Anderson*, 477 U.S. at 256.  Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)).

The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions,

not those of a judge, [when] he [or she] is ruling on a motion for summary judgment. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Anderson*, 477 U.S. at 255.

## **DISCUSSION**

In its motion for summary judgment, the United States argues it is entitled to summary judgment pursuant to California Civil Code § 846 (the "Recreational Use" statute). (*See* ECF No. 44-1.) In his motion for summary judgment, Plaintiff argues he is entitled to summary judgment on a handful of the United States' purported defenses, namely the Recreational Use statute, the *Feres* doctrine, as well as the "Due Care" and "Discretionary Function" exceptions to the Federal Tort Claims Act ("FTCA"). (*See* ECF No. 45-1.)

### **A. The FTCA and the Recreational Use Exception**

"The [FTCA] operates as a limited waiver of [the United States'] sovereign immunity from suits for negligent or wrongful acts of government employees which constitute 'ordinary common-law torts.'" *Gonzalez v. United States*, 814 F.3d 1022, 1026–27 (9th Cir. 2016) (citing *United States v. Gaubert*, 499 U.S. 315, 318 n. 4 (1991); and *Dalehite v. United States*, 346 U.S. 15, 28 (1953)). Nevertheless, the United States is only liable under the FTCA "if a private person[ ] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Ravell v. United States*, 22 F.3d 960, 961 (9th Cir. 1994); *see also* 28 U.S.C. §§ 2674–80.

"Under California law, private landowners are afforded a substantial measure of immunity from liability for injuries incurred by those entering or using their land for recreational purposes."[3] *Ravell*, 22 F.3d at 961 (internal quotations and

---

[3] "[T]he United States must be treated as a private person for purposes of our analysis, even if a different rule would apply to California governmental entities." *Ravell*, 22 F.3d at 961 (citations omitted).

citations omitted). That "immunity" is granted in part by the Recreational Use statute's general nullification of the common law duty of care owed by those with interests in real property to persons using such property for recreational purposes.[4] Cal Civ. Code § 846(a) provides that, "[a]n owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on those premises to persons entering for a recreational purpose, except as provided in this section." In *Klein v. United States*, 50 Cal. 4th 68, 78 (2010), the California Supreme Court observed that, "[b]y the plain meaning of the language in its first paragraph, Civil Code section 846 absolves California landowners of two separate and distinct duties: the duty to keep the premises safe for recreational users, and the duty to warn such users of hazardous conditions, uses of, structures, or activities on the premises." (internal quotations and citations omitted).

By its very terms, the Recreational Use statute has two preconditions to application, namely "(1) the defendant must be the owner of an estate or any other interest in real property, whether possessory or nonpossessory; and (2) the plaintiff's injury must result from the entry or use of the premises for any

---

[4] While not relevant to the Court's present analysis, the Recreational Use statute also "shields the landowner from liability for injuries caused by (rather than to) recreational users." *Klein*, 50 Cal. 4th at 78–79 (citing Cal. Civ. Code § 846(c)); Cal. Civ. Code § 846(c) ("An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby do any of the following: (1) Extend any assurance that the premises are safe for that purpose. (2) Constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed. (3) Assume responsibility for or incur liability for any injury to person or property caused by any act of the person to whom permission has been granted except as provided in this section.").

recreational purpose." *Ornelas v. Randolph*, 4 Cal. 4th 1095, 1100 (1993) (internal quotation marks omitted) (citing Cal. Civ. Code § 846(a)). There are three statutory exceptions to the limitations on liability provided by the Recreational Use statute, namely where the landowner: (1) "[w]illful[ly] or malicious[ly] fail[s] to guard or warn against a dangerous condition, use, structure or activity"; (2) gives permission to enter the premises for recreational purposes for consideration;[5] or (3) "expressly invite[s] rather than merely permit[s a person] to come upon the premises[.]" Cal. Civ. Code § 846(d)(1) – (3).

Here, Plaintiff does not challenge the United States' assertion that it is an "owner of any estate or any other interest in" the Armory for the purposes of the Recreational Use statute, and the Court concludes that the United States is in fact an "owner" of an interest in the Armory thereunder. *See Ornelas*, 4 Cal. 4th 1095, 1103 (1993) (Recreational Use statute "articulates an exceptionally broad definition of the types of interest in property which will trigger immunity" (internal quotations and citations omitted)); *Hubbard v. Brown*, 50 Cal. 3d 189, 197, 785 P.2d 1183 (1990) ("[T]he holder of a permit to graze livestock on federal lands in California is an owner of an interest in real property sufficient to come within the immunity afforded by section 846."); *Callahan v. Martin*, 3 Cal. 2d 110, 118, (1935) (a leasehold is an "estate in land" in California). Similarly, Plaintiff does not challenge the United States' assertion that H.S. was engaged in a recreational activity when he was injured, and the Court concludes that H.S.'s interactions with the Bounce House constitute a "recreational purpose" under the Recreational Use statute. *See* Cal. Civ. Code § 846(b) ("A 'recreational purpose,' as used in this section, includes activities such as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and

---

[5] "[O]ther than the consideration, if any, paid to said landowner by the state[.]" Cal. Civ. Code § 846(d)(2).

all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, hang gliding, private noncommercial aviation activities, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites."); *Ornelas*, 4 Cal. 4th at 1101 (because "recreational purpose" under Recreational Use statute "is not limited to activities which take place outdoors, and does not exclude recreational activities involving artificial structures[,] . . . clambering about on farm equipment is no different in kind from scaling a cliff or climbing a tree" and is "clearly recreational in nature").

      Rather, Plaintiff argues that the protections afforded by the Recreational Use statute should not apply to this case because the "Armory was not open to the public for recreational use" or was not "suitable for recreation." (ECF No. 45-1, at 10-12; ECF No. 53, at 7-8; *see also* ECF No. 51, at 16-18.) Both arguments, however, fail as a matter of law. *See Mansion v. United States*, 945 F.2d 1115, 1118 (9th Cir. 1991) ("[W]e reject Mansion's contention that the government may not invoke the immunity of Section 846 merely because the 'general public' does not have open access to the property in question. . . . Similarly, we reject Mansion's contention that the government does not deserve recreational use immunity because it actively discouraged use of the park by restricting entry. The security measures Mansion attempts to classify as discouragement serve to maintain the integrity of the military facility, not to limit access to the park by permitted users." (citations omitted); *Klein*, 50 Cal. 4th at 75 ("This court [has] rejected the argument, supported by earlier Court of Appeal decisions, that Civil Code section 846 does not apply if the property on which the injury occurred was, at the time of the injury, unsuitable for recreational use. . . . 'One who avails oneself of the opportunity to enjoy access to the land of another for one of the recreational activities within the statute may not be heard to complain that the property was inappropriate for the purpose.'" (quoting *Ornelas*, 4 Cal. 4th at 1108)); *Ornelas*, 4 Cal. 4th at 1107 ("The

[Recreational Use] statute reasonably applies to lands that are fenced as readily as those that are open."). Accordingly, unless an exception applies, the United States would be shielded from a premises liability cause of action by the Recreational Use statute.

Plaintiff argues that all three statutory exceptions apply. As to the "willful or malicious failure to guard or warn" exception (*i.e.*, § 846(d)(1)), however, Plaintiff has failed to establish at least one of the elements of such exception, namely that the United States or its agents "consciously failed to act to avoid the danger." *See Mattice By & Through Mattice v. U.S., Dep't of Interior*, 969 F.2d 818, 822 (9th Cir. 1992) ("To establish willful misconduct under California law, a plaintiff must show that the defendant: (1) had actual or constructive knowledge of the peril; (2) had actual or constructive knowledge that injury was probable, as opposed to possible; and (3) consciously failed to act to avoid the danger." (citations omitted)). Indeed, Plaintiff admits that the United States took at least some steps to prevent injury to users of the Bounce House by placing padded mats at its main points of ingress and egress. That the United States could have done more to prevent harm, "at most, would constitute negligence." *Id.* at 823 (where government had installed a warning sign at the base of a hill that the plaintiff mistakenly drove off, failure to take additional precautions to prevent injury would constitute no more than negligence); *Manuel v. Pac. Gas & Elec. Co.*, 173 Cal. App. 4th 927, 947-48 (2009) (where utility company installed anti-climbing devices on its towers, evidence of improper installation of such devices or failure to explicitly warn of the risk of electrocution attendant to climbing such towers "would show only negligence").

As to the "consideration" exception (*i.e.*, § 846(d)(2)), Plaintiff does not dispute the United States' assertion that no money changed hands in connection with H.S.'s entry onto the Armory. Rather, Plaintiff argues that H.S.'s attendance (and the attendance of service members' families, generally) to the Family Readiness Group's information briefing "conferred a benefit" to the United States

because it "aid[ed] in the retention of service members" by boosting their morale. (ECF No. 45-1, at 18-19; ECF No. 51, at 18-19; *see also* ECF No. 53, at 9-10.) Plaintiff's argument is unavailing, however, because "[a] landowner must gain some immediate and reasonably direct advantage, usually in the form of an entrance fee, before the exception to immunity for consideration under section 846 comes into play." *Johnson v. Unocal Corp.*, 21 Cal. App. 4th 310, 317 (1993). The purported benefit of improved employee morale is simply too indirect and speculative to constitute consideration. *See Mansion,* 945 F.2d at 1118–19 (benefit of improved labor relations resulting from picnic held on employer's property insufficient consideration under Recreational Use statute).

Finally, as to the "express invitation" exception (*i.e.,* § 846(d)(3)), Plaintiff argues that H.S. was expressly invited to the Armory by way of Captain Rankin's statements in the Newsletters and/or by SSG Shears via the authority delegated to him by Captain Rankin via his statements in the Newsletters. In response, the United States argues that, because the Newsletters "did not specifically address particular family members by name, type of family member, or otherwise", it was not a direct and personal invitation and therefore insufficient to constitute an express invitation. (ECF No. 50, at 23-25.) It further argues that SSG Shears had "no authority to personally invite family members on behalf of the United States." (ECF No. 52, at 8 n.4.) Yet there is no support in the case law for the purported requirement that H.S. be personally-named in the Newsletters to constitute a "direct and personal" invitation. Rather, all that is required is that the invitation be direct, personal, and to a person personally selected by the landowner. *See Wang v. Nibbelink,* 4 Cal. App. 5th 1, 32 (2016) ("'Express invitation' in section 846 refers to a direct, personal request by the landowner to persons whom the landowner personally selects to come onto the property" (citations omitted). Further, the parties do not cite, and the Court is unable to locate, prior decisions that directly define what constitutes a "direct, personal" request or what it means for a

landowner to "personally select" a person to invite. Rather, these concepts have generally been defined by exclusion. *See Phillips v. United States*, 590 F.2d 297, 299 (9th Cir. 1979) ("[I]t seems evident to us that the Legislature did not intend to include within the concept of express invitation, used in section 846, any invitation to the general public."); *Calhoon v. Lewis*, 81 Cal. App. 4th 108, 115, 96 Cal. Rptr. 2d 394, 398 (2000) ("[P]ersons responding to advertisements, brochures, promotional materials, and other public offers are not express invitees under the [Recreational Use] statute."); *Johnson*, 21 Cal. App. 4th at 317 (employer's execution of a rental agreement with landowner in connection with use of premises for employer's company picnic did not constitute an express invitation from landowner to employer's employees).

Contrary to the United States' suggestions, the instant case is easily distinguished from the caselaw upon which the United States relies for its argument that the Newsletters were not express invitations. *See Ravell*, 22 F.3d at 960, 962-63 (no express invitation to attend free air show where "event was widely publicized in newspapers and was attended by 300,000 people"); *Phillips*, 590 F.2d at 298-300 ("promotional literature from the Forest Service, describing the attractions of Angeles National Forest and its facilities" was not a "personal invitation" to individuals "to hike in the advertised national park"); *Casas v. United States*, 19 F. Supp. 2d 1104, 1107 (C.D. Cal. 1998) (no express invitation to run in race open to the public where the plaintiff "received a flyer promoting the [event] as part of a mass mailing" and the defendant "also advertised their event in sporting goods stores, health clubs, and schools"); *Coryell v. United States*, 855 F. Supp. 1120, 1121-22 (C.D. Cal. 1994) (no express invitation to attend military air show where the "event had been highly publicized to the general public, and the public was invited and encouraged to attend"). Unlike those cases, the facts of the instant case, viewed in the light most favorable to Plaintiff, are that the Newsletters was sent only to members of Captain Rankin's company, the 79th HHC, which totaled

no more than 170 individuals. (*See* ECF No. 44-2, at 32 (approximately 130 to 170 individuals assigned to Captain Rankin's company); *see also* ECF No. 45-2, at 23-26, 28-31 (Newsletters are addressed only to 79th HHC).) Moreover, the United States' reliance on a footnote in *Ravell* for the proposition that an invitation from a service member to his family members cannot constitute an express invitation from the United States overstates the holding in *Ravell*. *Ravell*, 22 F.3d at 961, 963 n.3 (invitation by service member to his mother to attend "widely-attended" airshow advertised to the general public attended by over 300,000 people was insufficient to constitute express invitation where the mother "presented no facts to indicate that [service member] was, in any sense, authorized to make express invitations on behalf of the United States which went beyond the advertised invitation to the general public"). Unlike in *Ravell*, Plaintiff has presented facts indicating that SSG Shears *was* authorized to extend an invitation on behalf of the United States by Captain Rankin exhortations in the Newsletters.[6] (*See* ECF No. 45-2, at 26, 31.)

Nevertheless, because genuine disputes of material fact exist as to whether Captain Rankin and/or SSG Shears had sufficient authority, whether through delegation or otherwise, to invite H.S. onto the Armory on behalf of the United States, and therefore whether the "express invitation" exception to the Recreational Use statute is triggered, summary judgment in favor of either party is inappropriate.

**B. The Discretionary Function Exception**

The "Discretionary Function" exception to the FTCA is set forth in the second

---

[6] While the United States argues that Captain Rankin, SSG Shears, and other service members had no authority to issue orders to civilians and therefore it was not mandatory for H.S. to attend the December 6, 2015 event, the Court does not see how those assertions impugns their authority *to invite* civilians such as H.S. onto the Armory or to delegate that authority to subordinate service members.

half of 28 U.S.C. § 2680(a), which provides that the United States' waiver of sovereign immunity under the FTCA does not extend to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Court utilizes a two-part test to determine the Discretionary Function exception's applicability, asking first "whether the challenged action was a discretionary one – *i.e.*, whether it was governed by a mandatory statute, policy, or regulation" and, if so, "whether the challenged action is of the type Congress meant to protect – *i.e.*, whether the action involves a decision susceptible to social, economic, or political policy analysis." *Whisnant v. United States*, 400 F.3d 1177, 1180–81 (9th Cir. 2005) (citing *United States v. Gaubert*, 499 U.S. 315, 322–25, (1991); *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988); and *O'Toole v. United States*, 295 F.3d 1029, 1033–34 (9th Cir. 2002)); *see also Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1214 (9th Cir. 2001) ("The exception is meant to protect political, social, and economic judgments that are the unique province of the Government, not all decisions involving some discretion. . . . [A]ctions based on technical or scientific standards are not the kind of judgments meant to be protected from liability by the discretionary function exception because those actions do not involve a weighing of policy considerations." (internal quotations and citations omitted)); *Gonzalez v. United States*, 814 F.3d 1022, 1028 (9th Cir. 2016) ("The decision need not actually be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis." (citations omitted)). "It is the government's burden to demonstrate the applicability of the discretionary function exception." *Id.* at 1181 (citing *Bear Medicine v. United States ex rel. Sec'y of the Dep't of the Interior*, 241 F.3d 1208, 1213 (9th Cir. 2001)). "Where the exception applies, the United States has not waived its sovereign immunity and we lack subject matter jurisdiction over the

claims." *Gonzalez*, 814 F.3d at 1027.

Here, Plaintiff concedes the first element of the two-part test, admitting that the United States' "acts and omissions in connection with the procurement, installation, and operation of the [Bounce House] . . . involved an element of judgment." (ECF No. 45-1, at 21-22.) Plaintiff denies that the second element is met, however, arguing that any discretion exercised in connection with the Bounce House "pertain[ed] to the safety of the invitees to the Armory" as opposed to relevant social, economic, or political policy. (*Id.* (citing *Whisnant*, 400 F.3d at 1181 ("[M]atters of scientific and professional judgment – particularly judgments concerning safety – are rarely considered to be susceptible to social, economic, or political policy.")).) Plaintiff further argues that to the extent that any decision to *adopt* safety precautions related to the Bounce House is susceptible to protected policy considerations, "the *execution* of that responsibility is not." (*Id.* (citing *Marlys Bear Med.*, 241 F.3d at 1215 ("The decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not.")); *see also* ECF No. 53, at 12-13 ("When choosing a location for the [Bounce House, the United States] was merely implementing safety precautions that were already in place.").) In response, the United States argues that the Discretionary Function exception prevents judicial second-guessing of the choice by Captain Rankin and other agents of the United States to place the Bounce House in the Armory's interior because those agents included safety and security concerns in their decision-making process. (ECF No. 50, at 29-30 ("The front grass area was dismissed due to concern over physical security measures, because Sgt. Vargas and others had heard news reports about National Guard members being targeted by outside organizations. The backyard of the Armory was also dismissed because it had military vehicles that were parked and often moving in and out, thereby creating a potential hazard." (citing ECF No.44-3, at 23, 27-28.)).)

The Court agrees with the United States that the decision of where to locate

the Bounce House was, by its nature, susceptible to a policy analysis that is shielded by the Discretionary Function exception. Plaintiff has identified no requirements, policies, or directives that prescribed a course of action for the United States' agents to follow in deciding upon a suitable location for the Bounce House. *See Summers v. United States*, 905 F.2d 1212, 1215 (9th Cir. 1990) ("[W]here the challenged governmental activity involves safety considerations *under an established policy*, rather than the balancing of competing policy considerations, the rationale for the exception falls away and the U.S. will be responsible for the negligence of its employees." (internal quotations and citations omitted)); *see also Marlys Bear Med.*, 241 F.3d at 1215 ("[A] general statutory duty to promote safety would not be sufficient to meet the *Berkovitz* requirement for specific regulations setting out a clear duty." (internal quotations, citations, and alterations omitted)). Further, the Court is unconvinced that objective technical, scientific or professional principles alone would guide such a decision. *See, e.g.*, *Soldano v. United States*, 453 F.3d 1140, 1147-51 (2006) (setting a safe speed limit for park roads "is essentially a matter of scientific and professional judgment" that is "circumscribed by objective safety criteria" and "empirical factors [such] as the elevation and stopping-sight distance of a road", whereas decision about the "use and placement of [warning] signs" requires "balanc[ing of] a panoply of social, economic, and political considerations", including "minimal intrusion, avoidance of unnecessary proliferation of signs and the safety of visitors"); *Childers v. United States*, 40 F.3d 973, 975-76 (9th Cir. 1994) (park rangers' decisions concerning trail maintenance and closure required balancing of access and public safety and thus fell within discretionary function exception); *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1027-31 (9th Cir. 1989) (decision not to line irrigation canal with concrete during design phase was susceptible to protected policy analysis, but the failure to remove unsuitable materials during construction was not). Indeed, in deciding where to locate the Bounce House, Captain Rankin

and the other decision-makers were engaged in balancing competing policy considerations, such as ensuring the safety of service members and other attendees, maximizing attendees' access to the planned activities at the event, and minimizing their interference with the other operations at the Armory. (*See* ECF No. 44-3, at 11, 23-24, 27-28.) Moreover, to the extent that Plaintiff argues that the "design/implementation" distinction is applicable to this issue, the Court concludes that, regardless of the appropriate classification, the Discretionary Function exception would still apply because protected policy considerations were nonetheless implicated in deciding where to locate the Bounce House. *See Whisnant*, 400 F.3d 1177, 1182 (9th Cir. 2005) ("Our case law reveals one exception . . . to the design/implementation distinction: The implementation of a government policy is shielded where the implementation itself implicates policy concerns, such as where government officials must consider competing fire-fighter safety and public safety considerations in deciding how to fight a forest fire, balance prison safety and inmate privacy considerations in deciding how to search a prisoner's cell in response to a reported threat of violence, or weigh various regulatory objectives in deciding whether to certify a new aircraft design." (citing *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1175–77 (9th Cir. 2002); *Alfrey v. United States*, 276 F.3d 557, 565 (9th Cir. 2002); and *Miller v. United States*, 163 F.3d 591, 595–96 (9th Cir. 1998))).

      Accordingly, the Court concludes that the United States has not waived its sovereign immunity as to the isolated issue of whether the United States was negligent in its selection of the Armory's interior, as opposed to the front or backyards, for erection of the Bounce House. The Court therefore lacks subject matter jurisdiction over such isolated issue. *See Gonzalez*, 814 F.3d at 1027. Nevertheless, the Court does have jurisdiction over the installation, operation, and maintenance of the Bounce House, including any claims related to the choice of where to locate the Bounce House *within* the Armory's interior.

## C. The *Feres* Doctrine & the Due Care Exception

The "*Feres* doctrine" is a reference to the Supreme Court's decision in the matter of *Feres v. United States*, wherein it was held that "the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1950). The *Feres* doctrine has been extended to bar claims from non-service members "for independent injuries stemming from allegedly negligent acts against military personnel." *Monaco v. United States*, 661 F.2d 129, 134 (9th Cir. 1981) (recovery barred for daughter's birth defect resulting from father's exposure to radiation while he was on active military duty); *see also In re Agent Orange" Product Litigation*, 506 F. Supp. 762 (E.D.N.Y.1980) (recovery barred to children claiming for genetic injuries and birth defects caused by parents' exposure to Agent Orange).

The "Due Care" exception to the FTCA is embodied by the first half of 28 U.S.C. § 2680(a), which provides that the United States waiver of sovereign immunity under the FTCA does not extend to "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). The Due Care exception "applies if (1) the statute or regulation in question 'specifically proscribes a course of action for an officer to follow,' and (2) 'the officer exercised due care in following the dictates of that statute or regulation.'" *Ferguson v. United States*, Case No. 3:15-CV-1253-JM-MDD, 2016 WL 4793180, at *7 (S.D. Cal. Sept. 14, 2016) (quoting *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005)).

In its response to Plaintiff's motion for summary judgment, the United States confirms that it "does not intend to assert the *Feres* doctrine, nor what Plaintiff identifies as the 'due care' exception under 28 U.S.C. § 2680(a)." (ECF No. 50, at 16.) The Court considers the United States' response a withdrawal of those

defenses and accordingly strikes them from the United States' answer (ECF No. 8, at 20.)  Therefore, Plaintiff's request for summary judgment on the *Feres* doctrine and Due Care exception defenses is denied as moot.

## **CONCLUSION**

Based upon the foregoing, the Court **DENIES** Defendant United States' motion for summary judgment (ECF No. 44) and **DENIES** Plaintiff's motion for summary judgment (ECF No. 45).  The Court **STRIKES** the *Feres* doctrine and Due Care exception defenses from the United States Answer (ECF No. 8) and therefore **DENIES AS MOOT** Plaintiff's request for summary judgment thereon.  Further, the Court lacks subject matter jurisdiction over the isolated issue of whether the United States was negligent in its selection of the Armory's interior, as opposed to the front or backyards, for erection of the Bounce House and such isolated claim is therefore **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: August 13, 2019

_____
Honorable Barry Ted Moskowitz
United States District Judge